# Presidential Authority to Settle Claims of the Hostages and Their Families

The President may agree to a settlement with Iran whereby any tort claims of the hostages and their families against Iran would be extinguished, without working a taking for a public purpose within the Just Compensation Clause of the Fifth Amendment. This conclusion is reinforced by the difficulty of identifying loss to the hostages and their families as a result of a claims settlement effected to secure their release, and the unlikelihood of their being able to recover in tort against Iran in any event in light of the noncommercial tort provision in the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(5).

October 14, 1980

MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

This responds to your request for our views on the authority of the President, pursuant to a general settlement of the present controversy with Iran that effects the release of the hostages, to extinguish tort claims the hostages and their families may wish to assert against the government of Iran. Our memorandum to you of September 16, 1980, regarding presidential authority to settle the Iranian crisis explores the President's claims settlement authority in detail. [*See* p. 248 *supra.*] Rather than repeat that discussion here, we will advert to its conclusions insofar as they affect the present discussion. We conclude here that the President has authority to extinguish the claims of the hostages and their families.

The President's authority over claims of our nationals against foreign governments is well summarized in Restatement (Second) of Foreign Relations Law of the United States § 213 (1965):

> The President may waive or settle a claim against a foreign state based on the responsibility of the foreign state for an injury to a United States national, without the consent of such national.

Presidents have often exercised this power to espouse and settle the claims of our citizens; these claims have often included tort claims for personal injury or death. *See id.,* Reporter's note to § 212.

Our earlier memorandum concluded that an exercise of this presidential authority to settle a claim for less than face value would not constitute a taking of private property within the meaning of the Just Compensation Clause of the Fifth Amendment to the Constitution.

286

Nevertheless, we noted the existence of dicta to the contrary in two Court of Claims decisions, principally *Gray* v. *United States,* 21 Ct. Cl. 340 (1886). Those dicta suggested that if the President settles a claim for less than "value" for unrelated foreign policy purposes, a taking of property for public use occurs. Whatever the current vitality of the *Gray* dicta, the question at hand is distinguishable, because these claims are held by persons whose benefit is a prime purpose of the Administration's negotiations to settle the crisis—the hostages themselves and their families. When a settlement is reached, no court will be in a position to determine whether release could have been secured without settlement or extinction of the tort claims in return.

The foregoing conclusion regarding the difficulty of identifying loss to the hostages and their families as a result of a claims settlement is reinforced by analysis of their prospects for tort recovery absent an agreement. For several reasons, it seems unlikely that they could recover damages against the government of Iran in court. First, the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(5), only allows the courts to award tort damages "against a foreign state for personal injury or death, . . . occurring in the United States." Torts to the hostages have not occurred in the United States. Regarding claims by their families for such torts as intentional infliction of emotional distress, it could be argued that the statute is ambiguous regarding whether it is enough for the injury to occur here even if the wrong does not. The Act's legislative history, however, emphasizes that the immunity of foreign states for their "public" acts as opposed to "commercial or private" acts is to be maintained, and that the exception for torts in the United States "is directed primarily at the problem of traffic accidents," suggesting that actionable wrongs must occur here. H.R. Rep. No. 1487, 94th Cong., 2d Sess. 7, 20 (1976). Thus it seems unlikely that the hostage families could recover against Iran in American courts. Morever, tort claimants cannot reach any Iranian assets in the United States without a license from the government because of the blocking order, and our earlier memorandum makes it clear that access to blocked assets cannot be a matter of legal right. Finally, if the hostages and their families were to resort to a foreign forum in which Iranian assets might be found, they would discover that doctrines of sovereign immunity of a foreign state are general in international law.

We also note that Congress is currently considering a bill (H.R. 7085) that would provide hostages and their families a variety of benefits in compensation for their travail.* If these benefits may fairly be viewed as compensation for the loss of their tort claims, it would be even more difficult to conclude that any constitutional taking has occurred.

---

*Note: The bill cited was eventually enacted as Pub. L. No. 96-449, 94 Stat. 1967 (1980). Ed.

Recognition of the prospect of a claims settlement in the legislative history would be helpful in this regard.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*